IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON HITNER,** | : | CIVIL ACTION NO. 1:21-CV-430 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **CORRECTIONS CAPTAIN REESE,** | : | |
| **CORRECTIONS LIEUTENANT** | : | |
| **NEWBERRY, CORRECTIONS** | : | |
| **OFFICER MACKEY, CORRECTIONS** | : | |
| **OFFICER JORDAN, CORRECTIONS** | : | |
| **OFFICER ERDLEY,** | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Clinton Hitner ("Hitner"), an inmate who was housed at all relevant times at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville"), commenced this action pursuant to 42 U.S.C. § 1983. (Docs. 1, 19, 40). Named as defendants are Corrections Captain Reese, Corrections Lieutenant Newberry, and Corrections Officers Mackey, Jordan, and Erdley. Before the court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 41, 52, 57). For the reasons set forth below, the court will grant defendants' motion (Doc. 52) for summary judgment and deny plaintiff's motions (Docs. 41, 57) for summary judgment.

I.      **<u>Factual Background & Procedural History</u>**[1]

Hitner claims that three alleged DMI gang members[2], Joey Oswald, TY, and Stretch, informed him that the DMI gang had a hit out on him at an unspecified date and time.  (Doc. 53 ¶ 1; Doc. 60 ¶ 1; Doc. 53-1, Deposition of Clinton Hitner ("Hitner Dep.") at 34-35, Notes of Transcript ("N.T.") 33:22-34:2).  Hitner claims that he was not a member of the DMI gang, nor was he affiliated with any organization or gang.  (Doc. 53 ¶ 2; Doc. 60 ¶ 2).  Oswald, TY, and Stretch did not inform Hitner about why, when, how, or who would attack him.  (Id. ¶ 3).

Hitner sent defendants Reese and Newberry a request to staff member form on or about September 12, 2018, reporting that he believed the DMI gang had a hit out on him and sought protective custody.  (Id. ¶ 4).  When presented with copies of the two requests to staff member forms he completed, Hitner acknowledged them

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (Docs. 42, 50, 53, 57-1 at 3, 60, 63).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] Although immaterial to the court's decision, we note that the record lacks any specific identification of the DMI gang or related gang affiliations.  Internet research indicates that a prison gang known as "Dead Man Incorporated" or DMI originated in the state of Maryland.  (See https://www.justice.gov/entity-popup/file/432121) (last visited August 15, 2022).

as true and accurate versions of the forms he submitted to Reese and Newberry in September 2018. (Id. ¶ 5). In so doing, Hitner identified only the DMI gang as a whole organization and did not inform Reese and Newberry of any specific individual, nor identified the three DMI gang members who had reported to him that there was a hit out on him. (Id. ¶ 6). Hitner was housed in the Restricted Housing Unit at the time of submitting these requests to staff forms to defendants Reese and Newberry. (Id. ¶ 7). Defendants Reese and Newberry contend that they informally investigated Hitner's claims but were unable to substantiate any of Hitner's vague claims. (Doc. 53 ¶ 8). Hitner asserts that defendants Reese and Newberry did not complete an informal investigation. (Doc. 60 ¶ 8).

On July 6, 2019, a third-party inmate, Shannon DeGeorge, attacked Hitner in the yard with two razors molded to a toothbrush. (Doc. 53 ¶ 9; Doc. 60 ¶ 9; Doc. 53-1, Hitner Dep. at 20, N.T. 19:23-24). As a result of the attack, Hitner avers that he suffers from post-traumatic stress disorder and has scars on his neck and face. (Doc. 42 ¶ 4). This attack occurred approximately ten months after Hitner's report in September 2018. (Doc. 53 ¶ 2; Doc. 60 ¶ 2). Hitner knew the third-party inmate incidentally prior to the attack on July 6, 2019. (Id. ¶ 10). The third-party inmate never made any threat to Hitner prior to the attack on July 6, 2019. (Id. ¶ 11). To Hitner's knowledge, the third-party inmate was not a member of the DMI gang. (Id. ¶ 12). The parties dispute whether the third-party inmate was incarcerated at SCI-Frackville in September 2018, when Hitner made his report. (Id. ¶ 13). Hitner claims that the third-party inmate had a history of stabbing people and behavior

3

management issues. (Id. ¶ 14). Other than his deposition testimony, Hitner provides no evidence as to whether the inmate who attacked him was a member of the DMI gang, was hired by the DMI gang to attack Hitner, or that the third-party inmate was present at the prison when he made the report to defendants in September 2018. (Id. ¶ 15).

Defendants Mackey, Jordan, and Erdley were working at SCI-Frackville on July 6, 2019. (Id. ¶ 16). The parties dispute whether defendants Mackey, Jordan, and Erdley were working in the metal detector building on July 6, 2019. (Doc. 57-1 at 3 ¶ 1; Doc. 63 ¶ 1). Defendants maintain that there is no record of which correctional officers were assigned to work within the metal detector building in the yard at SCI-Frackville on July 6, 2019, at 1:00 p.m. (Doc. 53 ¶ 17). Hitner has submitted a witness statement identifying defendants Mackey, Jordan, and Erdley as the correctional officers working in the metal detector building at SCI-Frackville on July 6, 2019 at 1:00 p.m. (Doc. 60 ¶ 17; Doc. 40-1).

## II.  Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F.Supp.2d 302, 312 (M.D. Pa. 2014); 10A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

**III. Discussion**

    **A. Qualified Immunity**

The doctrine of qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably." Id. at 231. "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first). In addressing Hitner's Eighth and Fourteenth Amendment claims, we only reach the first prong of the qualified immunity analysis.

**B.  Eighth Amendment Claim**

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. Id. at 833-34. An inmate making a failure to

protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Actual knowledge can be proven circumstantially where the general danger was obvious. Farmer, 511 U.S. at 842. For example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (quotation marks and citation omitted). However, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." Beers-Capitol, 256 F.3d at 133.

Here, Hitner alleges that defendants failed to protect him from inmate DeGeorge, who allegedly attacked him with two razors molded to a toothbrush. Hitner asserts that, prior to this incident, he warned defendants Reese and Newberry about threats of violence from gang members at SCI-Frackville.

7

Specifically, he contends that he submitted request to staff member forms to defendants Reese and Newberry in September of 2018. Defendants argue that Hitner's claim must fail because he never reported any threat made by the third-party inmate to him to any of the defendants, he has not established that the third-party inmate posed a serious risk of harm to him and that they were aware of any such threat of harm. (Doc. 54 at 15-16).

The uncontroverted record reflects that Hitner's request to staff member forms did not mention inmate DeGeorge and did not alert defendants about any danger posed by inmate DeGeorge. (Doc. 53-3 at 8-9). Based on Hitner's own account, the request to staff member forms merely stated that he was in danger after a threat by DMI gang members. (Id.) Hitner has not provided any specific details of what, if anything, he told prison officials about inmate DeGeorge and has not provided any evidence that inmate DeGeorge threatened him or was prone to violence against him. Importantly, Hitner admits that inmate DeGeorge was not even a member of the DMI gang. (Doc. 53 ¶ 12; Doc. 60 ¶ 12; Doc. 53-1, Hitner Dep. at 35, N.T. 34:4-6). At his deposition, Hitner testified that he did not have any previous problems with inmate DeGeorge, inmate DeGeorge never threatened him, and he did not view him as a threat. (Doc. 53 ¶¶ 10, 11; Doc. 60 ¶¶ 10, 11; Doc. 53-1, Hitner Dep. at 21-22, N.T. 20:25-21:14). He further testified that he had a friendly relationship with inmate DeGeorge, he was not worried to be in his presence, and when inmate DeGeorge attacked him, Hitner was "caught . . . off guard." (Doc. 53-1, Hitner Dep. at 21-22, N.T. 20:3-21:14). Additionally, the incident wherein Hitner

alleges that he was threatened by DMI gang members was ten months before his assault. From September 12, 2018—the date Hitner submitted the request to staff member forms—to July 6, 2019—the date of the assault, Hitner does not appear to have had any contact with prison staff about this issue. (See generally Doc. 53-3). Moreover, Hitner has not provided any evidence to refute defendants' document that inmate DeGeorge was not even incarcerated at SCI-Frackville when Hitner made his report in September of 2018. (Doc. 53-3 at 4). The alleged threat and the assault are too temporally remote to constitute deliberate indifference in violation of the Eighth Amendment. These instances were nearly one year apart with little to connect them aside from Hitner's subjective sense that they were related and inmate DeGeorge's alleged statement that he was acting on behalf of the DMI gang.

Even if defendants were aware that inmate DeGeorge had a history of violence, the Third Circuit has held that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative to maintain a failure to protect claim against prison officials. Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). The Third Circuit reiterated this, affirming a grant of summary judgment to prison officials even where the inmate had reported a prior attack to an unnamed guard. See Zuniga v. Chamberlain, 821 F. App'x 152, 157 n.8 (3d Cir.

2020).³  In the instant case, the record establishes that the assault by inmate DeGeorge was not the product of "longstanding, pervasive, well-documented, or previously noted tensions between" Hitner and inmate DeGeorge.  Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014).

Hitner further asserts that defendants Mackey, Jordan, and Erdley were working in the yard metal detector building and allowed inmate DeGeorge to pass through the metal detectors with a shank.  He has submitted the declaration of a fellow inmate identifying defendants Mackey, Jordan, and Erdley as the correctional officers working in the yard metal detector building on July 9, 2019 at 1:00 p.m. (Doc. 40-1).  However, Hitner has failed to establish that defendants Mackey, Jordan, and Erdley knowingly allowed inmate DeGeorge to enter the yard with a weapon or that they were aware of and disregarded any specific threat of harm prior to the attack.  Nor did Hitner plead that inmate assaults regularly occurred in the prison yard, such that the prison officials should have been aware of a risk of harm.  While courts have entertained failure-to-protect claims based on the failure to use metal detectors, those cases involved allegations that prison officials had knowledge of a pervasive problem with prior attacks and showed deliberate indifference by failing to use metal detectors to prevent subsequent attacks.  See, e.g., Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (denying a motion to

---

³ The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

dismiss a claim that a metal detector would have prevented the inmate's attack, where the inmate had alleged that the defendants were "aware that assaults and stabbings regularly took place in the prison yards," that weapons were often stored in the yards, and that an inmate had previously been killed in the yard for lack of metal detectors); cf. Emile v. SCI-Pittsburgh, No. 2:04-cv-974, 2008 WL 4190782, at *6 (W.D. Pa. Sept. 10, 2008) (granting summary judgment based on the lack of "evidence [ ] show[ing] that [the defendants] w[ere] aware of a pervasive risk of inmate attacks from metal objects in the exercise yards"); Hannah v. Vanguilder, No. 08-cv-441, 2010 WL 1372385, at *5 (N.D.N.Y. Feb. 11, 2010) (recommending, *inter alia*, that the court grant summary judgment on a claim that a prison facility implemented a policy or custom under which metal detectors were used sporadically, noting that, "[a]t best, [the plaintiff had] assert[ed] that defendants were negligent in failing always to use the metal detectors"), report and recommendation adopted, No. 9:08-cv-441, 2010 WL 1404276 (N.D.N.Y. Apr. 7, 2010). Hitner fails to meet the deliberate indifference standard under the Eighth Amendment as he only sets forth facts against defendants Mackey, Jordan, and Erdley amounting to mere negligence. See Burton v. Kindle, 401 F. App'x 635, 637-38 (3d Cir. 2010) (finding inmate plaintiff failed to allege the prison official behaved with deliberate indifference because his complaint did not set forth any facts suggesting the official personally knew another inmate would attack him and noting that mere negligent conduct is not actionable under § 1983).

The record would not permit a reasonable factfinder to conclude that defendants knew that inmate DeGeorge posed a risk of harm to Hitner and deliberately ignored that risk.  Therefore, summary judgment in favor of defendants is appropriate.  Because Hitner failed to establish an Eighth Amendment violation, defendants are entitled to qualified immunity.

### C.   Fourteenth Amendment Claim

In the amended complaint, Hitner alleges that defendants Mackey, Jordan, and Erdley violated his "equal protection rights to be free from cruel and unusual punishment under the 8th Amendment."  (Doc. 19 ¶ 18).  Defendants have thus construed the amended complaint as asserting a Fourteenth Amendment equal protection claim.  (Doc. 54 at 20-21).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012).  If a distinction between persons does not implicate a suspect or quasi-suspect class,

state action will be upheld if it is rationally related to a legitimate state interest. See Tillman, 221 F.3d at 423. Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. See Vill. of Arlington Heights, 429 U.S. at 265-66. Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment. See Bd. of Trustees v. Garrett, 531 U.S. 356, 367 (2001); Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002).

Prisoners do not constitute a protected class for Fourteenth Amendment purposes. See Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251, 263 (3d Cir. 2001). Furthermore, Hitner has not adequately alleged that he was treated differently from others who were similarly situated. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment").

In Crawford-El v. Britton, 523 U.S. 574 (1998), in noting that summary judgment serves as the ultimate screen to "weed out truly insubstantial lawsuits prior to trial," the Supreme Court held that in order to overcome summary

13

judgment on a § 1983 claim where intent is an element of the claim, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Id. at 600 (citing Anderson, 477 U.S. at 256-57).

Hitner appears to assert that defendants Mackey, Jordan, and Erdley intentionally treated him differently when they allowed an inmate to bring a shank into yard.  However, his deposition testimony and his declaration do not provide affirmative evidence of intent, and do not address an equal protection claim.  Additionally, in his brief in opposition to defendants' motion for summary judgment, Hitner neglected to address the equal protection claim.  Hitner's equal protection statement is speculative, wholly conclusory, and unaccompanied by any corroborating facts or affirmative evidence of defendants' intent.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  Allegations made without any evidentiary support may be disregarded. See Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000); see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (stating "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").  Hitner's equal protection claim simply has no evidentiary support.  Accordingly, the court will grant defendants' motion for summary judgment with respect to the Fourteenth Amendment equal protection claim.

**IV.     Conclusion**

Defendants' motion (Doc. 52) for summary judgment will be granted and plaintiff's motions (Docs. 41, 47) for summary judgment will be denied. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       August 15, 2022